[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by a summons and complaint dated May 6, 1999 and returnable June 8, 1999 in which complaint CT Page 4748 the plaintiff petitioner wife sought a dissolution of the marriage, alimony pendente lite, permanent alimony, return of personal property removed by defendant from marital residence, exclusive use and occupancy of the residence at 21 Curtis Street, Norwich, an assignment of property pursuant to C.G.S. 46b-81 and such other relief as the court deemed equitable.
Along with the complaint there was a plaintiffs motion for alimony pendente lite and on October 12, 1999 an order was entered by the Court, Kenefick, J., having to do with payments on a Volvo motor vehicle and alimony. The order for alimony being in the amount of $225.00 per week. With the complaint there was also plaintiffs motion for exclusive use of the family residence, plaintiffs motion for return of personal property, which motion was granted by the Court, Solomon, J., on July 19, 1999 by stipulation, a motion for allocation of debt accompanied the complaint, the usual automatic orders were also attached.
On June 7, 1999 the defendant filed an answer to the complaint and a cross complaint and in the cross complaint sought a dissolution of the marriage, an equitable division of the marital assets, and such other relief as the court might find equitable.
Incident to a motion dated June 4, 1999 filed by the defendant, the Court, Kenefick, J., entered an order that the plaintiff should have possession of the 1989 Volvo automobile and be solely responsible for the payment on that vehicle.
The defendant had filed an appearance by counsel on June 7, 1999.
On August 16, 1999 the defendant filed a motion for contempt claiming a violation of an order of the court as concerns the exchange of settlement proposals.
On August 30, 1999 the defendant filed a financial affidavit with the court.
On September 13, 1999 the plaintiff filed a motion for contempt with regard to claiming a violation of a court order with regard to the exchange of settlement proposals.
On October 7, 1999 another motion for contempt pendente lite was filed by the defendant as concerns violation of a court order pertaining to the making of certain car payments. CT Page 4749
On October 12, 1999 the plaintiff filed a financial affidavit as did the defendant on the same date.
On October 21, 1999 another motion for contempt pendente lite was filed by the plaintiff and heard by the Court, Hurley, J., and certain orders entered incident thereto.
On March 1 and March 2, 2000 the parties with their witnesses appeared before the court and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff and the defendant were united in marriage on June 21, 1997 in Portage, Wisconsin. The Court earlier having allowed a correction to the complaint with regard to the spelling of the town in Wisconsin.
This was the third marriage for the Plaintiff. Her maiden name was Vitouladitis. The plaintiff has a daughter issue of a prior marriage. That child's name is Stephanie Hope who is now age 17-3/4. The child lives with the plaintiff and the plaintiff receives child support for that child from the child's father.
The plaintiff is employed as a home-health aide. Her employer is Connecticut Visiting Nurses' Association, Southeast. The plaintiffs duties require that she visit elderly homebound people, some of whom are in serious physical condition or people with chronic problems and assists them in a variety of problems and necessities such as bathing, feeding, and merely holding hands with the patients, that she is serving.
The plaintiff was previously employed in a convalescent home for three years. The plaintiff is presently serving one client. The plaintiff is paid on an hourly basis per job.
The plaintiffs age is 39.
The defendant's age is 38.
The plaintiff indicates that her health is good. She was nervous merely by virtue of being required to be in court.
The residency requirement has been met.
There are no children issue of this present marriage. No CT Page 4750 children have been born to the plaintiff from the date of the marriage to the present time.
The plaintiff became acquainted with the defendant at about 1992.
The defendant lived on her street. In 1996 the defendant, in the words of the plaintiff, "became a serious suitor."
The plaintiff had been single for 15 years prior to starting to date the defendant. The defendant suggested that they date exclusively. The defendant apparently was very generous in the relationship, brought her gifts and matters of like nature.
As the relationship became serious, the plaintiff required that the defendant submit to an AIDS test and to provide a current financial affidavit.
The plaintiff was concerned that the defendant be in good health.
The defendant complied with the plaintiffs request as to a test and provided a credit report.
The plaintiffs concern in this regard was the experience she had in a prior union where her former spouse apparently left her with heavy debt requiring a bankruptcy petition.
The defendant provided the above-noted credit report to the plaintiff in 1996.
The defendant disclosed to the plaintiff that he was paying child support with regard to a prior relationship.
The plaintiff claimed that she relied on the defendant's honesty in the relationship.
The defendant is employed at the Niantic Correctional Facility as a corrections officer.
The defendant moved into the plaintiffs home, then at 17 Curtis Street in Norwich after the parties were married.
The plaintiff now lives at 21 Curtis Street.
At the time of the marriage the plaintiff held a one-third CT Page 4751 interest in the property known as 17 Curtis Street, formerly her grandparents' home.
The plaintiffs mother lives now at 17 Curtis Street.
The plaintiff received her fractional interest from her family and has had that interest for about the last ten years.
21 Curtis Street is owned by the plaintiff's parent mother.
The plaintiff assists her plaintiff mother and pays her $600.00 a month.
The plaintiff and her daughter reside at the stated address.
The defendant resided with the plaintiff at 21 Curtis Street for a period of time prior to the marriage as well as thereafter.
The defendant made no contribution with regard to the expenses of the property at 21 Curtis Street prior to the marriage.
The marriage was undertaken in conjunction with a family reunion and get together in Portage, Wisconsin where the parties in fact were married.
The plaintiff described the occasion as a lovely time and that at the time of the marriage everything to the plaintiffs view seemed all right. There were no debts and the defendant's health had been established.
After the marriage and while the parties were living at 21 Curtis Street, the defendant's periodic check for services was available to pay bills and household expenses.
The plaintiff and the defendant separated on April 19, 1999. The circumstances of the defendant's leaving were as set forth hereinafter.
The parties had gone to marriage counseling one year before the date of the separation trying to keep lines of communication open.
The defendant's birthday was April 17, 1999. On the day of the defendant's leaving, the defendant was working the third shift.
On April 19, 1999 when the plaintiff returned home, she found, CT Page 4752 in her words, "everything gone."
The plaintiff testified that the house had been gone through, that the defendant had taken what he had brought into the marriage, and that of necessity must have had assistance in removing the goods and effects. The defendant's motorcycle and boat were gone. The defendant took a computer, some furniture, camping gear, a weedwacker and other items.
A note had been left by the defendant on the door addressed to the plaintiff.
The plaintiff represented that she was hurt and shocked, she thought that the relationship of the parties was to such an effect that they would, in her words, "grow old together."
After the defendant had left, he returned certain papers to the plaintiff, which apparently were her property.
There had been some arguments during the course of this admittedly brief marriage but apparently they had always resolved themselves. Marriage counseling had helped.
The parties had discussed certain common goals.
After the marriage, the plaintiff claimed that certain statements, bills and obligations appeared on the scene totaling about $15,000.00 of which she was not aware.
There was also a problem with regard to an Ohio support order entered with regard to the defendant's first marriage and orders of the court incident thereto, as well as debts on a couple of auto loans amounting to over $6,000.00, a repair notice, a dental collection bill, a hospital bill, a gym bill, a bill for pediatric group services and delinquent tax bills, all of which caused the plaintiff upset and concern.
On being confronted with the plaintiffs claims as to the state of the defendant's debt, the defendant acknowledged the bills.
The plaintiffs only obligation according to the testimony at the time of the marriage was a debt on a VISA credit card in the amount of $589.00, plus the obligation to members of her family or her parent mother with regard to her fractional interest in the real property and the mortgage obligation incident thereto. CT Page 4753
During the marriage the plaintiff controlled payment of the bills and during the marriage the plaintiff endeavored to have some of the funds go toward the liquidation of the defendant's credit card debt where the interest rates were high.
At the time that the defendant left, it was claimed that the credit card debt was in the amount of approximately $21,000.00.
The plaintiffs debts as shown on her financial affidavit at this time would appear to be $5,742.00 and $6,273.00; these being the balances remaining after the partial liquidation of the $21,000.00.
Incident to the earlier orders of the court with regard to the payments on the Volvo automobile, the court granted a garnishment order but apparently the same was never put into place.
The Volvo automobile had been purchased for the plaintiff by the defendant and the car that she had at that time was traded in incident to this transaction.
The defendant has acknowledged and consented to the plaintiff having and retaining the 1989 Volvo and has indicated that he would be responsible for the balance due on said vehicle.
On the premises at 17 Curtis Street at one time there was a Cadillac automobile owned by the defendant, but the same has apparently been removed by him.
The plaintiff has asked for the return of certain items of personal property including her grandfather's wedding ring, a chainsaw, a file cabinet, a telephone, a certain automobile pass, a Mobil speed pass for petroleum products purchases, certain computer games, music tapes and some items of clothing, as well as certain books pertaining to Alcoholics Anonymous and a collection of 20 Nancy Drew books, vintage 1940.
As concerns the plaintiffs one-third interest in the Curtis Street property, the mortgage balance due on that is to the approximate amount of $60,000.00. As indicated, the plaintiff being a one-third owner, the other two-thirds being owned and held by her parent mother.
The plaintiff initially claimed that certain tax bills that should have been paid by the defendant were not paid but it would appear that any obligation incident thereto was for a period of CT Page 4754 time prior to the marriage and therefore could not be the defendant's responsibility.
Certain issues were raised with regard to the defendant's support obligation and an arrearage incident thereto. Here again, that pertained to child support with regard to a child not issue of this marital union and the defendant has apparently been paying that off on a periodic basis; so much on principal and so much on the arrearage.
The plaintiff testified that if she had known of the true state of the defendant's finances that she would not have entered into the marriage.
The plaintiff testified that she also took a test with regard to her physical well being but did not disclose the results thereof to the defendant
The plaintiff works in various statewide locations. The plaintiff works approximately 25-1/2 hours a week. The plaintiff has worked 40-hour weeks at an earlier point in time when she was employed by a convalescent home. The plaintiff describes her title as that of a geriatric aide.
Employment on the basis of 40 hours a week is presently available to the plaintiff.
The plaintiff claims that the physical challenge of her work is stressful.
By way of illustration, the plaintiff indicated that over the last several years, 27 of those that she was attending have passed away.
For a period of time during this brief marriage the defendant's daughter lived with the parties but it did not apparently work very well.
The defendant has worked overtime incident to his job at Corrections and the checks received by the plaintiff and the defendant were deposited into a mutual joint account and the plaintiff as indicated wrote out the requisite checks.
There were claims made with regard to the cost of the wedding; allegedly in the neighborhood of $10,000.00. The record is unclear in that respect. CT Page 4755
In response to questions by the court, the plaintiff indicated that there was no physical violence during the marriage, there was no immoderate or excessive use of alcohol, there was no substance abuse, there were some arguments, primarily of a financial order.
As indicated, the plaintiff stated her health was good, her education extended four years beyond high school, but she does not have a bachelor's degree, no military service by the parties.
The defendant before his last vacating of the premises and the removal of his goods and effects had on several prior occasions moved out. On at least one of those occasions the defendant claimed that he was distressed because the plaintiff put his goods, wares, clothing and so forth, in plastic garbage bags and the claim was that some of them were exposed to the weather.
The plaintiff claimed that the defendant took back her engagement ring after the separation, but the defendant disputed this.
The plaintiff indicated that on numerous occasions incident to trying to make the marriage work, he took the defendant's daughter to school in Stonington, which apparently was also the cause of contention.
When working in a convalescent home the plaintiffs hourly rate is $6.18. She is now earning $9.OO+ for her present work.
The plaintiff did the usual household tasks during the marriage, cleaning, cooking, and matters of like nature.
There was some testimony with regard to the defendant having received a gay-type magazine which caused the plaintiff concern. Subsequent testimony revealed that this was supposedly a prank initiated by one of the defendant's co-workers. Certain issues were also raised with regard to matters of intimacy.
From the testimony of William Melanson, this gentleman has been acquainted with the defendant for nine years and has worked with him at Corrections, and on other jobs. This witness is a corrections officer. There have been social contacts between the parties.
This witness testified that as a prank he sent a copy of a CT Page 4756 gay-type magazine to the defendant. The witness testified that to the best of his knowledge and belief no such tendencies were ever exhibited by the defendant.
This witness and the defendant had resided together for a period of three years.
The defendant testified that he had known the plaintiff for about four years before the marriage. They dated exclusively for about one year.
While the plaintiff was residing at 21 Curtis Street, the defendant moved in.
At one time the plaintiff was the defendant's landlord.
When the defendant moved in with the plaintiff, a joint checking account was established between the parties.
Prior to the marriage of these parties the defendant was under an obligation to pay $140.00 bi-weekly for child support.
The defendant testified that at the time of the marriage the automobile loans were outstanding and payments incident to the same were coming out of his contributions to the joint account.
Testimony was had with regard to the circumstances of the wedding in Portage, Wisconsin; a number of people attending, the renting of hotel rooms, the weather, the cost, and matters of like nature.
The defendant testified that he often times works between 50 and 70 hours a week. He has worked second jobs. The defendant has two children issue of prior relationships; a daughter Crystal, age 14 and a daughter Evelyn, age 10. Crystal is in Mystic, Connecticut. Evelyn is in Ohio.
The daughter Crystal spent on average three days a week with the plaintiff and the defendant.
The testimony was that the plaintiff was very resentful and jealous with regard to the defendant's daughter and any obligations incident thereto for driving the child to school.
The defendant testified that the child Crystal had to cook for herself apparently the relationship between that child and the CT Page 4757 plaintiff was poor. The defendant testified that the plaintiff did not cook at all for the parties and was not interested in culinary pursuits. The parties dined out regularly; particularly at a place called the Olympia Restaurant.
The defendant helped with regard to yardwork of the property.
The defendant and his daughter apparently were required to look after their own laundry needs. The defendant characterized the state of the home in terms of orderliness as being in disarray.
The parties, the plaintiff and the defendant, went to various concert shows and matters of like nature; on one occasion spending $1,200.00 for a one-night stay in New York. They would visit casinos. In addition, the plaintiff had a substantial collection of animal items, lions and tigers, some of which were antique. Also antique medalions. The testimony was that at least $5,000.00 had been spent on those items.
The defendant has no problem with regard to the plaintiff retaining these.
At the time of the marriage the defendant testified that he had three credit cards, Direct Merchants, Kay Jewelers, that his debt to Direct Merchants at the time he left was approximately $8,000.00. He testified he paid off an American Express credit card. There was a problem during the marriage after the purchase of the Volvo automobile. The plaintiff being upset that she had not been allowed to drive it home.
The defendant was of the opinion that the plaintiffs tirades contributed to the breakdown of the marriage.
There was an occasion with regard to attendance at a circus where the plaintiff objected to the children of the defendant being able to go. The situation was apparently to such effect that the defendant's daughter Evelyn is not desirous of returning to Connecticut for any visitation.
Prior to the marriage the plaintiff had apparently undergone some cosmetic surgery. The final cost being in the neighborhood of $4,000.00. A portion of this was paid off by the parties during the course of the marriage.
On one of the occasions of the separations of the parties the plaintiff told the defendant "stay gone," and pushed the CT Page 4758 defendant.
As indicated, on one or more of the occasions of defendant's departures his clothes and effects and those of his daughter Crystal had been put into containers that apparently left something to be desired.
The defendant testified that the manner of his vacating the premises and the items that he took without the plaintiff being aware of it was his concern of being involved in a domestic dispute which would prejudice his being able to continue as a correctional officer.
There are certain items that apparently belong to the defendant's daughter Crystal which the defendant is desirous of having returned.
The defendant testified that he made all the necessary or required car payments pursuant to the order of the court from the time that he left, that he has paid all the ordered alimony in the amount of $225.00 a week since the October order which has totaled over $5,000.00.
The defendant makes no claim as to the 17 Curtis Street property and the defendant tried to explain to the plaintiff the circumstances concerning the gay magazine.
There was certain explicit testimony with regard to matters of intimacy which the court does not feel it is necessary to dwell on mindful of the fact that the parties are seeking a dissolution of their union.
The defendant has been employed at the York Correction Facility for the last 11 years and he has participated in a retirement plan for that period of time.
His hourly rate is $19.99 for 56.8 hours. In addition, he works at odd tasks in the Stonington area.
At the conclusion of the testimony the plaintiff indicated through her counsel and in reply to a question by the court that if the court were to see fit to require the defendant to pay off the debts earlier stated in this memorandum that she would abandon her claim as to alimony as set forth in the proposed orders. CT Page 4759
From the respective financial affidavits of the parties the Court finds from the plaintiffs financial affidavit that her occupation is that of a home health aide presently employed by Omni of Eastern Connecticut (Masonic Care), weekly gross $204.66, deductions for taxes and social security and Medicare, $38.71, for a net weekly wage of $165.95.
Additional income shown as $65.11 and the pendente lite order which has been $225.00 a week for a total net weekly income of $456.06.
The plaintiffs weekly expenses are shown as $521.41. The plaintiffs liabilities are shown as a Chase VISA obligation of $5,742.00 and a First USA credit card balance, $6,273.00.
The plaintiff values her 17 Curtis Street one-third interest as a one-third interest in the premises apparently totally valued at $74,000.00, a mortgage of $60,000.00, and the plaintiff has a one-third interest in the equity shown as $4,666.00. years and he has participated in a retirement plan for that period of time.
His hourly rate is $19.99 for 56.8 hours. In addition, he works at odd tasks in the Stonington area.
At the conclusion of the testimony the plaintiff indicated through her counsel and in reply to a question by the court that if the court were to see fit to require the defendant to pay off the debts earlier stated in this memorandum that she would abandon her claim as to alimony as set forth in the proposed orders.
From the respective financial affidavits of the parties the Court finds from the plaintiffs financial affidavit that her occupation is that of a home health aide presently employed by Omni of Eastern Connecticut (Masonic Care), weekly gross $204.66, deductions for taxes and social security and Medicare, $38.71, for a net weekly wage of $165.95.
Additional income shown as $65.11 and the pendente lite order which has been $225.00 a week for a total net weekly income of $456.06.
The plaintiffs weekly expenses are shown as $521.41. The plaintiffs liabilities are shown as a Chase VISA obligation of $5,742.00 and a First USA credit card balance, $6,273.00. CT Page 4760
The plaintiff values her 17 Curtis Street one-third interest as a one-third interest in the premises apparently totally valued at $74,000.00, a mortgage of $60,000.00, and the plaintiff has a one-third interest in the equity shown as $4,666.00.
The plaintiff shows the 1989 Volvo automobile valued at $3,197.00 with a loan balance of $4,525.00 with a zero equity, $20.00 in the Connecticut State Employee Credit Union, an MITA mutual funds account of $1,000.00 and three bonds totaling $100.00.
The defendant shows his occupation as that of a corrections officer at the York Correctional Institution, weekly gross income of $1,136.00, deductions for federal and state taxes, FICA and items shown as Tier II in the union, $415.14, for a net of $720.86.
The defendant shows his weekly expenses as $879.27.
The defendant shows debt in the amounts as follows: Direct Merchants balance due $142.00, Provincial, balance due $655.00, American Express, balance due $1,972.00.
The defendant shows no real estate ownership on his financial affidavit.
The defendant values the 1989 Volvo at $6,000.00 with a loan balance of $5,667.00 for a $333.00 equity, a $1989 Chevrolet Corsica valued at $2,800.00 free and clear, miscellaneous personal property and furnishings, $3,000.00. There is no figure shown for an item designated as Liberty Bank checking, $1,200.00 in a mutual fund.
From the exhibits the Court finds, referring to Defendant's Exhibit 1, a letter dated July 12, 1999 from the State of Connecticut Retirement and Benefit Services Division, Office of the Comptroller, to the defendant indicating as follows: "If you terminated State service today with 10 years and 2 months of credited service, and an average salary of $58,100.00 for your three highest paid years of State service, your basic yearly retirement allowance effective May 1, 2017 the first of the month following your 55th birthday would be approximately $7,300.00 payable at $600.00 a month. This estimate reflects a straight `life annuity benefit without a survivor option.'"
In Defendant's Exhibit 1 the following paragraph continues to CT Page 4761 this effect, "Tier II is a defined benefit plan funded by the State on an actuarial basis. As such there is no State contribution individually assigned to a member's account; however, as a hazardous duty member you have been required to contribute 4% of your State earnings to SERS since January 26, 1990. As of today's date your account has $16,560.06 in contributions and $2,485.15 in awarded interest posted to it."
Plaintiffs Exhibit A is a list of items which the plaintiff is desirous of having returned to her. The exhibit speaks for itself items of clothing, equipment and matters of like nature.
Plaintiffs Exhibit B is a copy of a withholding order for support as concerns the defendant in a support order issued incident to a support liability of the defendant's for a child that has no relationship to this marital union.
Plaintiffs Exhibit C is merely a copy of the wedding invitation notice as concerns the marriage of the parties June 21st at Sunset Park, Portage, Wisconsin.
 Discussion
This is a marriage that has extended for a period of about two years and nine months. It is the third marriage for the plaintiff petitioner wife and the second for the defendant.
The plaintiff, as indicated, is age 39 and her health is good.
The defendant is age 38. He is likewise in good health.
There are no children issue of this union.
The defendant complied with the request to the plaintiff before the parties were joined in marriage in submitting to a test for AIDS and in providing a financial statement.
The parties actually separated in April of 1999 and therefore the time during which they actually resided together in which there were in addition some short-term separations, was for a period of not more than one year and ten months.
The marriage was not beset with some of the problems that the court so frequently sees insofar as severe physical violence, immoderate use of alcohol or substance abuse. CT Page 4762
The principal problem would appear to have been that the plaintiff felt deceived with regard to the defendant's financial situation mindful of the various and sundry debts that came to light after the parties had been joined in marriage.
The financial situation of the defendant is manifestly much more stable and secure than that of the plaintiff. His income is several times greater than the plaintiffs.
The interest of the plaintiff with regard to her fractional interest in real estate is not a matter in contention nor are there any requests made as to the real estate of the court.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-82 regarding alimony.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, their candor or lack thereof, and all exhibits and the arguments of council
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the present financial situation that exists.
The Court enters the following orders.
The defendant shall maintain the plaintiff on his medical insurance coverage under COBRA for the maximum statutory period. This shall be at the plaintiffs expense and the plaintiff shall pay all expenses incurred that are not reimbursable under the provisions of the coverage.
The defendant shall pay and discharge and be responsible for the following two debts as shown and reflected on the financial affidavit of the plaintiff; to wit, Chase VISA, $5,742.00 and First USA, $6,273.00 or in the event that these debts have been CT Page 4763 reduced in any way by payments during the pendency of the proceedings the defendant shall pay whatever the outstanding balance due is on each account as of the date of this order.
The plaintiff may retain her one-third fractional interest in real estate known as 17 Curtis Street.
The plaintiff may retain and have title to the 1989 Volvo automobile which was purchased for her by the defendant during the pendency of the marriage.
The defendant shall pay and discharge the remaining loan balance due thereon with the exception of the payments which the plaintiff was required to make for November and December of 1999 and January and February of the year 2000 as previously ordered by the Court. The defendant shall pay the balance due as noted above within 90 days of the date herein.
Mindful of the Court's order with regard to the Chase VISA and First USA debts and the representations of the plaintiff and her counsel at the conclusion of the trial, no alimony is awarded to the plaintiff. No alimony is awarded to the defendant.
The plaintiff may retain her MITA mutual fund account in the amount of $1,000.00 and the three bonds presumably savings bonds which total $100.00.
In addition the plaintiff may retain the modest small balance in the Connecticut State Employee Credit Union.
Each of the parties may retain the furnishings, goods, wares and personalty presently in their possessions with the exception of items noted hereafter.
The defendant may retain his retirement and benefit services plan and program as noted in Defendant's Exhibit 1. He may retain said retirement fund and allowance and benefit plan free of any claim by the plaintiff petitioner.
The plaintiff may have and retain the items shown on Plaintiff's Exhibit A; to wit, her winter coat, windbreaker jacket, chainsaw, weedwacker, hydraulic jack, telephone, file cabinet, her grandfather's wedding ring. There is no indication that the dirt bike that was run over was the result of intentional conduct by the defendant and therefore the Court does not enter any order incident to the restitution for that vehicle. CT Page 4764
The plaintiff may have any housekeys, Mobil speedpass, the 20 pre-War Nancy Drew series books, the AA bluebooks and a certain yellow Pfaltzgraf placement mat set, her handmade lion and tiger ornament items, and the list of games that are shown on the exhibit, Galaxy, Scrabble, Fleetwood animal clip.
The defendant may retain the Chevrolet Corsica, the 1984 Cadillac, his daughter Crystal's baby videos, Crystal's dress, Crystal's coat, Crystal's locket, Vinny's video camera, Crystal's waterbed.
The plaintiff may have and retain the tractor, the diamond ring purchased as an investment, the portable garage, as noted the lion and tiger collection, any antique $100 bills and any other personalty currently in her-possession.
The Court enters no orders as to attorney's fees. Each party shall be responsible to their own counsel.
The Court grants the relief prayed for, dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
Austin, J.